GRACE HULIN ALBERTSON v. W. H. ALBERTSON.

(Filed 28 January, 1935.)

1. **Courts B a—Power of Legislature to create courts inferior to Supreme Court.**

   Under constitutional authority, Art. IV, sec. 12, the General Assembly may create courts inferior to the Supreme Court, provided the General Assembly does not delegate its discretion (N. C. Code, Art. 18, subch. 4), and provided such inferior courts do not have substantially the same powers as those of the Superior Courts, and are given a less extensive jurisdiction, with provision for appeal from such inferior court to the Superior Courts, so that the constitutional powers and provisions relative to the Superior Courts are not invaded.

2. **Same—Municipal Court of City of High Point held to have had jurisdiction of suit for divorce between the parties.**

   The municipal court of the city of High Point is held to have had jurisdiction to grant a judgment for absolute divorce between the parties to this action under the provisions of ch. 699, Public-Local Laws of 1927, amending ch. 569, Public-Local Laws of 1913, both parties being residents of the city, and the act giving the city court jurisdiction in divorce actions providing for appeal to the Superior Court, and the city court being given an original jurisdiction less extensive than that of the Superior Court of the county.

3. **Statutes A e—**

   A statute will not be declared unconstitutional unless clearly so.

   STACY, C. J., dissents.

APPEAL by plaintiff from *Clement, J.,* at June Term, 1934, of GUILFORD. Affirmed.

This is an action, brought by plaintiff against defendant in the Superior Court of Guilford County, N. C., to declare null and void a judgment of absolute divorce obtained by defendant against plaintiff in the municipal court of the city of High Point.

The plaintiff alleged in her complaint: "That chapter 699 of the Public-Local Laws of 1927, and all acts amendatory thereof, are illegal, invalid, and unconstitutional so far as they purport or intend to confer jurisdiction upon the municipal court of the city of High Point to grant divorces, and particularly with respect to the judgment of divorce purported to have been granted against the plaintiff."

The judgment of the court below is as follows: "This cause coming on to be heard and being heard at the June Term of the Superior Court of Guilford County, before the Hon. J. H. Clement, judge presiding, on agreement of counsel for the plaintiff and the defendant that the court should hear the evidence and make findings of fact and conclusions of

law as judge and jury, both the counsel for the plaintiff and the counsel for the defendant expressly waiving the right to a jury trial in open court, and the court finding the following facts, to wit: (1) That Grace H. Albertson and W. H. Albertson were married to each other on 19 June, 1923. (2) That on 30 May, 1932, an action was started in the municipal court of the city of High Point by W. H. Albertson against Grace H. Albertson for an absolute divorce. (3) That the said action was tried at the September, 1932, Term of municipal court of the city of High Point and a judgment for absolute divorce was signed on 20 September, 1932, which said judgment is the judgment referred to in paragraph 3 of the complaint. (4) That at the time the said action for divorce was started in the municipal court of the city of High Point, and at the time the same was tried there, both W. H. Albertson and Grace H. Albertson were residents of the city of High Point, and High Point Township, in Guilford County, North Carolina. (5) That the municipal court of the city of High Point derives its authority to proceed in civil matters and divorce actions from chapter 699 of the Public-Local Laws of 1927, and acts amendatory thereof.

"On the foregoing finding of facts, the court being of the opinion that the municipal court of the city of High Point is a valid and constitutional court, and had at the time the said action for divorce was instituted and tried, jurisdiction over both the parties and the subject-matter to the said divorce action; and the court further being of the opinion that the said judgment, signed on 30 September, 1932, granting absolute divorce to W. H. Albertson, is a valid and subsisting judgment rendered by a competent court: It is therefore ordered, adjudged, and decreed that the action of the plaintiff be and the same is hereby dismissed. It is further ordered, adjudged, and decreed that the plaintiff pay the cost of this action, to be taxed by the clerk. This 21 June, 1934. J. H. Clement, judge holding courts of the Twelfth Judicial District."

The plaintiff excepted and assigned error as to the signing of the judgment set out in the record, and appealed to the Supreme Court.

*Thomas Turner, Jr., for plaintiff.*
*T. W. Albertson and Walser & Casey for defendant.*

CLARKSON, J. Is the judgment of the municipal court of the city of High Point granting the defendant an absolute divorce null and void? We think not.

The Constitution of North Carolina, Art. IV, sec. 12, is as follows: "Jurisdiction of courts inferior to Supreme Court.—The General Assembly shall have no power to deprive the judicial department of any power or jurisdiction which rightfully pertains to it as a coördinate depart-

ment of the government; but the General Assembly shall allot and distribute that portion of this power and jurisdiction which does not pertain to the Supreme Court among the other courts prescribed in this Constitution, or which may be established by law, in such manner as it may deem best; provide also a proper system of appeals; and regulate by law, when necessary, the methods of proceeding in the exercise of their powers, of all the courts below the Supreme Court, so far as the same may be done, without conflict with other provisions of this Constitution."

N. C. Code of 1931 (Michie), sec. 1436, is as follows: "The Superior Court has original jurisdiction of all civil actions whereof exclusive original jurisdiction is not given to some other court; and of all criminal actions in which the punishment may exceed a fine of fifty dollars, or imprisonment for thirty days; and of all such affrays as shall be committed within one mile of the place where, and during the time, such court is being held; and of all offenses whereof exclusive original jurisdiction is given to justices of the peace, if some justice of the peace shall not within twelve months after the commission of the offense proceed to take official cognizance thereof."

In *Rhyne v. Lipscombe*, 122 N. C., 650 (653), speaking to the subject: "While the General Assembly is given the power to allot and distribute the jurisdiction of the courts below the Supreme Court, this is with the important limitation that it must be done 'without conflict with other provisions of this Constitution.' This renders it essential to consider what is the inherent nature of the Superior Courts created by those 'other provisions' of the Constitution itself, which treats them with so much consideration, prescribing the election and terms of whose officers, besides the other provisions above recited. *The General Assembly may allot and distribute the jurisdiction below the Supreme Court, but it cannot in doing so create new courts with substantially the same powers as the Superior Court* and make the officials thereof elective otherwise than by the people, subject to be abolished by legislative enactment, and hence without independent tenure of office as prescribed by the Constitution and freed from the provisions as to rotation, the residence of the judges and the requirements as to two terms annually in each county, and being always open. All this cannot be done simply by creating new Superior Courts, styling them 'Circuit Courts' or 'Criminal Courts,' or otherwise." (Italics ours.) . . . "What was the 'Superior Court' as the term was well understood at the time of the adoption of the Constitution? It meant the highest court in the State, next to the Supreme Court and superior to all others, from which alone 'appeals lay direct to the Supreme Court; and possessed of general jurisdiction, criminal as well as civil, and both in law and equity. It cannot be deprived of that superiority and preëminence, or deprived of either its criminal or civil

jurisdiction without conflict with the constitutional provisions creating it. That jurisdiction may be made largely appellate by conferring such part of its original jurisdiction on inferior courts as the General Assembly may provide, but it cannot retrench the extent of its jurisdiction, which it must retain either by original or appellate process. . . . There are these restrictions and the further inherent one, as above stated, that the Superior Court is at the head of the court system below the Supreme Court, and that from it alone appeals can come up to this Court. From the inferior courts, therefore, appeals must go to the Superior Court of the county and not direct to this Court."

The vice in the *Rhyne case, supra,* was that the General Assembly gave the courts "concurrent, equal jurisdiction, power, and authority with the judges of the Superior Courts of this State," etc. Further, an appeal must be taken when an inferior court has jurisdiction to the Superior Court.

Under this article of the Constitution (Art. IV, sec. 12) the General Assembly of North Carolina has made provision for inferior courts. N. C. Code of 1931 (Michie), subchapter 4, Art. 18, The establishment, organization, jurisdiction, and procedure is set forth for (1) Municipal Recorder's Courts; Art. 19, (2) County Recorder's Courts; Art. 20, (3) Municipal County Courts; subchapter 5, Art. 24, (4) General County Courts; 25A, (5) District County Courts; subchapter 6, (6) Civil County Courts; subchapter 7, (7) County Criminal Courts.

In *Provision Co. v. Daves,* 190 N. C., 7 (12), it is said: "The recorder's court of Durham County has been in existence, exercising limited jurisdiction in criminal matters, for some time; *as to whether further power and jurisdiction of a civil nature shall be allotted and distributed to it is a question for the General Assembly to decide, and this may not be delegated to the commissioners of Durham County.* It will be observed that the present act does not purport to confer civil jurisdiction on recorders' courts, leaving only to the commissioners of the respective counties the decision as to whether local conditions make it desirable to bring their county within the operation of the law; but the discretion and power to confer limited civil jurisdiction is by the act expressly delegated to the local bodies. This is clearly a delegation of legislative power and cannot be upheld." (Italics ours.)

The above case decided that the General Assembly could not delegate its discretion. In the recent (*Oil case*) *Panama Refining Company et al. v. Ryan et al.,* decided 7 January, 1935, the Supreme Court of the United States held a provision of sec. 9 (c), the National Recovery Act, unconstitutional as an unwarranted delegation of legislative power to the Executive.

The validity of these courts established by the General Assembly have been repeatedly upheld. *Jones v. Brinkley,* 174 N. C., 23 (26); *Sewing Machine Co. v. Burger,* 181 N. C., 241 (244); *In re Harris,* 183 N. C., 633; *Williams v. Williams,* 188 N. C., 728 (730); *Queen v. Comrs. of Haywood,* 193 N. C., 821. Under the general acts, *supra,* inferior courts have been established all over the State. By legislative enactments, they have been established in certain large counties, like Forsyth, Buncombe, and others, in the State. These courts have aided greatly in the administration of justice. They have limited jurisdiction, less and not substantially the same powers as the Superior Courts, with right of appeal to the Superior Courts on matters of law or legal inference. They have been useful in having justice administered without "delay." Constitution of North Carolina, Art. I, sec. 35.

In *Cook v. Bailey,* 190 N. C., 599 (601), it is said: "It will be noted that the appeal from the Forsyth County Court to the Superior Court is for 'errors assigned in matters of law in the same manner and under the same requirements as are now provided by law for appeals from the Superior Court to the Supreme Court.' Appeals must be taken from an inferior court to the Superior Court, and thence to the Supreme Court. *Rhyne v. Lipscombe,* 122 N. C., 650; *S. v. Lytle,* 138 N. C., 741; *Oil Co. v. Grocery Co.,* 169 N. C., 523; *Hosiery Mills v. R. R.,* 174 N. C., 453; *Sewing Machine Co. v. Burger,* 181 N. C., 241; *Thompson v. Dillingham,* 183 N. C., 568."

Under chapter 569, Public-Local Laws of 1913, the General Assembly passed an act entitled, "An act to establish a municipal court for the city of High Point," before Art. II, sec. 29, of the Constitution of North Carolina became effective on 10 January, 1917.

Chapter 699, Public-Local Laws of 1927, amended chapter 569, *supra,* relative to adding civil jurisdiction to the municipal court for the city of High Point, sec. 5 (a), in part, is as follows: "Exclusive original jurisdiction in all civil actions, and divorce actions, matters and proceedings, including also all proceedings whatever, ancillary, provisional, and remedial to civil actions founded on contract or tort, wherein the Superior Court of Guilford County now has exclusive original jurisdiction, excepting special proceedings, *quo warranto, mandamus,* caveat to wills, administrations, condemnation proceedings, and street widening proceedings: *Provided,* the party plaintiff be a resident of the city of High Point or one mile thereof. . . . (j) That appeals may be taken by either the plaintiff or the defendant in civil actions or by the defendant in any criminal action and by the State in such criminal actions as the State is allowed appeals from the Superior Court, from the High Point Municipal Court to the Superior Court of Guilford County in term time for errors assigned in matters of law in the same

manner and under the same requirements as are now provided by law for appeals from the Superior Court to the Supreme Court," etc.

The cases of *Hendrix v. R. R.,* 202 N. C., 579, and *Lewellyn v. Lewellyn,* 203 N. C., 575, concerned the municipal court of the city of High Point. We think the factual situation in those cases were different from the present case. In the case at bar, the finding of fact (4) is: "That at the time the said action for divorce was started in the municipal court of the city of High Point, and at the time the same was tried there, both W. H. Albertson and Grace H. Albertson were residents of the city of High Point and High Point Township, in Guilford County, North Carolina."

From the findings of fact, Grace H. Albertson was served with summons, the facts entitling W. H. Albertson's right to an absolute divorce were found against her by a jury. She took no appeal.

The judgment of the court below is as follows, in part: "On the foregoing finding of facts, the court being of the opinion that the municipal court of the city of High Point is a valid and constitutional court, and had, at the time the said action for divorce was instituted and tried, jurisdiction over both the parties and the subject-matter to the said divorce action; and the court further being of the opinion that the said judgment, signed on 30 September, 1932, granting absolute divorce to W. H. Albertson is a valid and subsisting judgment, rendered by a competent court."

We see no error in same. The General Assembly amended again chapter 569 of the Public-Local Laws establishing a municipal court for the city of High Point. Private Laws 1933, ch. 132, sec. 2 (a), is as follows: ". . . The municipal court of the city of High Point shall have original concurrent jurisdiction with the Superior Courts in all civil actions, matters, and proceedings, and divorce actions," etc.

This amendment was made, no doubt, to meet the factual situation in the *Hendrix case, supra,* which is different from the present case.

In regard to declaring an act of the General Assembly unconstitutional, it is said in the *Queen case, supra,* at page 823: "If there is any reasonable doubt, it will be resolved in favor of the lawful exercise of their powers by the representatives of the people. *Sutton v. Phillips,* 116 N. C., at p. 504; *Hinton v. State Treasurer,* 193 N. C., 499."

For the reasons given, the judgment of the court below is
Affirmed.

STACY, C. J., dissents.